## LINTON v. OMAHA WHOLESALE PRODUCE MARKET HOUSE CO.†

(Circuit Court of Appeals, Eighth Circuit. October 26, 1914.)

No. 4031.

1. JUDGMENT (§ 585*)—RES JUDICATA.

Where a second action is on the same claim or demand as the first, and is between the same parties or their privies, the judgment in the first, if rendered on the merits, constitutes an absolute bar to the prosecution of the second.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1064, 1067, 1073, 1084, 1085, 1092–1095, 1132; Dec. Dig. § 585.*]

2. JUDGMENT (§ 670*)—PRIOR SUIT—CAPACITY OF PARTIES.

Where, in a prior suit to quiet title to real property, L. was joined as a defendant, and, though his capacity as trustee was not disclosed in the title, such was the interest attributed to him in the body of the bill, the judgment in favor of the complainant in that suit was a bar to a subsequent suit by complainant as trustee for the same beneficiaries.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1181, 1185; Dec. Dig. § 670.*]

3. JUDGMENT (§ 585*)—CONCLUSIVENESS—RES JUDICATA.

Where, in a prior suit to quiet title, complainant was joined as a defendant, and sued as trustee for certain infant children, it was his duty to set up whatever claims of title he had; and his failure in that suit to rely on a certain deed did not entitle him, after an adverse decree, to maintain another suit to establish the trust, based on such deed.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062–1064, 1067, 1073, 1084, 1085, 1092–1095, 1132; Dec. Dig. § 585.*]

Appeal from the District Court of the United States for the District of Nebraska; William H. Munger, Judge.

Suit by Adolphus F. Linton, trustee, etc., against the Omaha Wholesale Produce Market House Company. From a decree dismissing the bill, complainant appeals. Affirmed.

Charles Haffke, of Omaha, Neb. (Halleck F. Rose, John F. Stout, and Arthur R. Wells, all of Omaha, Neb., on the brief), for appellant.

F. H. Gaines, of Omaha, Neb. (E. G. McGilton and Sidney W. Smith, both Omaha, Neb., on the brief), for appellee.

Before ADAMS and CARLAND, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. This was a suit in equity, brought by Adolphus F. Linton, the appellant, against the Omaha Wholesale Produce Market House Company, to charge lots 5 and 6 of block 164 in the city of Omaha, the legal title to which stood in the name of the defendant, with a trust in favor of complainant as trustee for his children, for an accounting of rents, income, and profits, and for other relief. The answer put in issue the allegations of the bill, and pleaded in bar a former judgment alleged to have been rendered in an action between the same parties, or their privies, involving the same issues as are here involved. Although evidence was taken on the merits, the cause by stipulation of parties was submitted to the court for

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied January 11, 1915.

final decision on the plea in bar. The court below sustained this plea and entered a decree dismissing the bill. From that decree the complainant appeals.

Did the court err in sustaining that plea? In answering this question the following pertinent facts are involved:

A common source of title is found in Phœbe Linton, wife of the complainant, who, it is claimed, entered into an antenuptial contract with the complainant, prior to their marriage in 1878, by the provisions of which a certain trust was created in favor of children which might be born of the marriage. This contract was not at the time recorded in the office of the register of deeds of Douglas county, Neb., but subsequently, for the purpose of affecting the public with knowledge of its contents, certain deeds were executed. Among them was one executed by Mrs. Linton (Mr. Linton joining), conveying the premises to Kate Remnant, and another one, simultaneously executed by Kate Remnant, conveying the premises to Mr. Linton. These deeds were dated March 31, 1897, and recorded June 2, 1902. On May 1, 1897, Mrs. Linton executed another deed conveying the premises to complainant. In this deed is found the following recital:

"Whereas, an antenuptial agreement and settlement was entered into between the said Phœbe R. E. E. Linton and the said Adolphus F. Linton on the 10th day of December, 1878: Now, in consideration of the agreement and settlement, witnesseth that the said party of the first part (Phœbe R. E. E. Linton), for and in consideration of the sum of $50,000 agreed to be paid and the sum of $1,000 * * * unto her well and truly paid by the party of the second part (Adolphus F. Linton) at or before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted," etc.

After the acknowledgment of this last-mentioned deed appears a written statement as follows:

"I declare this deed has only just been found, after being lost for several years. This property was deeded to me to hold in trust for Charles S. Linton and Fryda A. B. Linton, my children. I declare I hold the legal title in trust for my children according to the terms of the marriage agreement made before marriage to my wife, P. R. E. Linton.

"[Signed]    Adolphus F. Linton."

The deed dated May 1, 1897, with the declaration of trust written upon it, as just recited, was recorded in the office of the register of deeds of Douglas county, Neb., on August 6, 1906. By virtue of the foregoing conveyances Mr. Linton claims to own the lots in question as trustee for his children.

Defendant's title is deraigned from Mrs. Linton in this way: In 1892 she executed a mortgage conveying certain other real estate to the National Life Insurance Company of Vermont to secure the payment of a note for $25,000. In 1896 suit was instituted to foreclose this mortgage. Anticipating that the proceeds of sale of the mortgaged premises would not be sufficient to pay the amount due on the note, complainant in that suit specifically prayed for a deficiency judgment against Mrs. Linton. A decree of foreclosure followed in due time, and the proceeds of sale of the mortgaged property being insufficient to pay the mortgage debt, on March 15, 1901, a deficiency judgment was rendered against Mrs. Linton in the sum of $1,982.50.

Execution was duly issued on this judgment and in 1905 it was levied upon the lots in question in this case, as the property of the judgment debtor. They were subsequently sold under execution and purchased by one Anson E. Becker, to whom on August 28, 1905, they were conveyed by appropriate official deed.

By reason of a claim then made that Becker's title emanating from Mrs. Linton was not good, he, on September 19, 1905, instituted a suit in the district court of Douglas county, Neb., against Mr. Linton, Mrs. Linton, and their two children, Charles S. Linton and Fryda S. Blessing, née Linton, alleging in his bill that the defendants claimed some right, title, or interest in the lots so purchased by him, by virtue of the two Remnant deeds. It was alleged in the bill that since those deeds were executed Mr. Linton had filed some declaration of trust whereby he claimed to hold the premises in suit for his children by virtue of some antenuptial settlement between himself and his wife, when in truth and in fact the children had no right or interest in or to the premises, but that they were the sole and absolute property of Mrs. Linton, from whom he (Becker) deraigned his title; that the purpose and intent of the Remnant deeds was to defeat the collection of the judgment of the National Life Insurance Company, to defraud that company and other creditors of Mrs. Linton, and that the declaration of trust afterwards made by Mr. Linton in favor of his children conferred no right upon them as against the complainant who had the legal title. The complainant, Becker, then prayed that the deeds from Mrs. Linton to Kate Remnant and Kate Remnant to Mr. Linton be declared void and of no effect, and that Becker's title to the lots in question be quieted as against the claims of each and all of the defendants in that suit, and that he might have such other and further relief as might appear equitable and just.

The defendants in that suit joined issue on the substantial averments of the bill and pleaded affirmatively that the Remnant deeds were made for the purpose of executing the provisions of the antenuptial agreement and that Mr. Linton held title to the lots in question as trustee for his children.

On the issues so made the cause came on for a hearing on the merits and resulted on July 13, 1906, in a decree in favor of the complainant, Becker, adjudging the Remnant deeds null and void, canceling the same, and decreeing that Becker's title be quieted and confirmed in him as against the defendants and all persons claiming by, through, or under them. This judgment was affirmed by the Supreme Court of the state of Nebraska. See Becker v. Linton, 80 Neb. 655, 114 N. W. 928, 127 Am. St. Rep. 795.

Thereafter, on August 13, 1906, Becker conveyed the lots so acquired by him, being the lots now in controversy, to the defendant the Omaha Wholesale Produce Market Company. It is now claimed by this defendant, appellee herein, that the judgment in the case of Becker v. Linton constitutes a prior adjudication of the controversy disclosed by the pleadings and proof in this case, and that complainant is estopped by that judgment from prosecuting this case. Is this correct?

[1] The governing rule which we must apply in answering this question is this: If the second action is upon the same claim or demand as was the first, and is between the same parties or their privies, the judgment in the first action, if rendered on the merits, constitutes an absolute bar to the prosecution of the second action. It is a finality as to the claim or demand involved in the first action, concluding parties and those in privity with them, not only as to any matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Wiggins Ferry Co. v. O. & M. Railway Co., 142 U. S. 396, 12 Sup. Ct. 188, 35 L. Ed. 1055; Gordon v. Ware National Bank, 132 Fed. 444, 65 C. C. A. 580, 67 L. R. A. 550; Stewart v. Board of Trustees, 84 C. C. A. 451, 156 Fed. 773.

In the Becker suit it appears that Anson E. Becker, in whom was vested the legal title of record to the lots now in controversy, was the complainant; that Adolphus F. Linton, the complainant in the present action, his wife, Phœbe Linton, through whom Becker acquired title, and Linton's two children, Charles Linton and Fryda Linton, were the defendants. The purpose of that suit was to set aside the two Remnant deeds, whereby title to the lots was conveyed to Mr. Linton, to quiet title thereto in Becker, and for general relief. In the bill in that case it was averred that those deeds were executed for the alleged purpose of vesting title to the lots in question in Mr. Linton as trustee for his children, pursuant to the requirements of an antenuptial contract; whereas, in truth and in fact the deeds were resorted to as a device to hinder, delay, and defraud the creditors of Mrs. Linton. On these allegations issue was joined by all the defendants in that case, but in their answer they affirmatively invoked the obligation arising out of the antenuptial contract as a good consideration for the Remnant deeds, and alleged that Mr. Linton, by means of those deeds, acquired and held title to the lots in question as trustee for his children pursuant to the requirements of that contract.

It thus appears that the parties to this suit were the same as those in the Becker suit, excepting that the defendant in this case is the grantee of the complainant in that, and complainant Adolphus F. Linton, in this suit, was one of the defendants in that suit, joined with the beneficiaries, for whom he claimed to be acting in that suit as well as in this suit. In other words, the parties to the present action, although differently arrayed, are the same as those in the Becker suit, or in privity with them. The substantial issue in both cases is whether Mr. Linton, by virtue of the antenuptial contract and subsequent deeds, so acquired title to the lots as trustee for his children as to defeat the assertion of a claim thereto by creditors of Mrs. Linton, the former owner. In the first-mentioned suit Becker asserted absolute ownership in them as against a claim of defendants that Mr. Linton owned them as trustee for his children. In this suit Mr. Linton claims that he, as trustee for his children, is the owner as against the Market House Company, which claims to be the owner as grantee of Becker, claimant in the first suit. It is difficult to conceive of causes

which present a more perfect identity of parties or privies and of causes of action.

A lengthy argument is made in the brief of appellant's counsel to the effect that as Becker, prior to the commencement of his suit, had parted with his interest in the premises in question to the Market House Company, the defendant in this case, and as the latter company was not made a party to the Becker suit, it is not bound by the decree rendered in that suit, and consequently complainant is not estopped by it. This argument is constructed upon the assumption that Becker had disposed of the property before he commenced his suit. There is some vague and indefinite testimony, altogether oral and of a hearsay character, to the effect that Becker had commenced negotiation for the sale of the premises before he brought his suit, but that on account of claims made by complainant and those associated with him he was required to clear his title before a sale could be consummated. After a careful reading of all the record contains on this subject, we are unable to find in it anything but incomplete negotiation, and surely nothing of the certainty and dignity of a binding contract of sale of real estate. We accordingly refrain from further consideration of the interesting argument made on the erroneous assumption.

[2] It is contended by appellant's counsel that, as Adolphus F. Linton was not impleaded in the Becker suit as trustee, but as an individual, in his own right, he cannot be estopped from prosecuting this suit, in whch he appears in his capacity as trustee for his children, by the judgment rendered against him in that suit. Here, too, we think the assumption is unfounded. It is true he was not designated in the caption of the Becker suit as *a trustee,* but averments are found throughout the bill in that suit which most clearly disclose that he was there charged with making a claim to the lots in question solely as trustee for his children. It is quite common and altogether proper to describe the capacity of a named defendant or his relationship to other parties in the body of the bill, without disclosing them in the style of the action at all. Not only so, but the defendants in the Becker case pleaded affirmatively that Mr. Linton held title to the lots in question for his children, and the case was tried on that issue. That issue was, therefore, not only made, but fully tried, in the Becker suit. Cavender v. Cavender, 114 U. S. 464, 5 Sup. Ct. 955, 29 L. Ed. 212; City of Denver v. Mercantile Trust Co., 120 C. C. A. 100, 201 Fed. 790.

[3] Contention is made that the deed of Mrs. Linton to Mr. Linton, dated May 1, 1897, conferred upon him some right in addition to or different from the right acquired by him by means of the Remnant deeds, and that the present action, in so far as Mr. Linton grounds his right upon the deed of May 1, 1897, presents a different claim or demand from that involved in the Becker suit, and that as a result, the judgment in that case is not res adjudicata of his present claim. We fail to see any merit in this contention. Whether Mr. Linton acquired legal title to the premises by one deed or another is not material. The real question is whether he had so acquired title and de-

clared a valid trust in favor of his children as to extinguish the right of Mrs. Linton to the property and thus destroy Becker's title derived through her. The mere legal title, without the creation of a trust in favor of his children, to serve the purpose of a consideration for the deeds to him, would have constituted a voluntary conveyance only by Mrs. Linton, which would not have screened her property from the demands of her creditors. The existence of the trust was therefore the all-important issue in both cases. But let it be conceded that Mr. Linton did acquire some additional support to his pretensions by the deed of 1897; inasmuch as that was available to him in the Becker suit as a defense to the contention of Becker, the judgment rendered in that suit is just as conclusive against the prosecution by Mr. Linton of a second action based on that deed as it would have been had that deed been actually pleaded or proved as a part of his case in the Becker suit. The judgment in that case was a finality, not only as to what was offered and received to sustain or defeat the claim or demand therein involved, but as to any other admissible matter which might have been offered for that purpose. See cases supra.

We have carefully considered the arguments of counsel that the Becker judgment was obtained by fraud, as the result of a conspiracy between Becker and the defendant in this case; but for reasons unnecessary to be specified it is not convincing. The District Court in our opinion was clearly right in sustaining the plea in bar; accordingly it becomes unnecessary to consider some other questions relating to the merits of the case which were argued by counsel.

The decree of the District Court is affirmed.